UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v.-<br><br>TATIANA DANIEL<br><br>     Defendant. | 21 Cr. 729 (LAK) |

**MEMORANDUM IN AID OF SENTENCING**
**<u>ON BEHALF OF TATIANA DANIEL</u>**

Ezra Spilke, Esq.
Law Offices of Ezra Spilke, PLLC
1825 Foster Avenue, Suite 1K
Brooklyn, New York 11230
(718) 783-3682
ezra@spilkelaw.com

*Counsel for Tatiana Daniel*

-i-

## TABLE OF CONTENTS

LIST OF EXHIBITS ........................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

DISCUSSION .................................................................................................................................. 1

    I.    The History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1) ........................ 1

    II.   The Offense: Nature and Circumstances of the Offense, the Guideline Range, and Avoiding Unwarranted Sentencing Disparities 18 U.S.C. §§ 3553(a)(1), (a)(4), (a)(6) ............. 2

CONCLUSION ................................................................................................................................ 3

## LIST OF EXHIBITS

Exhibit A .....................Synopses of Recent Fraud Sentences in the Eastern and Southern Districts

Exhibit B ................................Statement of Reasons, 15 Cr. 166 (JBW) (E.D.N.Y. July 13, 2016)

**INTRODUCTION**

Tatiana Daniel will appear for sentencing on May 18, 2023. Her guideline range is 33 to 41 months. For the following reasons, a substantial downward variance is warranted to ensure that the sentence that Ms. Daniel serves will be no greater than necessary to achieve the aims of sentencing.

**DISCUSSION**

**I.   The History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)**

Ms. Daniel's assessment of being twice convicted as a 29-year-old is short and to the point: "It's not cute." Ms. Daniel delivers this evaluation in her typical deadpan style, but she is not being flippant. Ms. Daniel has pride in herself: in her intelligence, her wit, her entrepreneurial flair, her style. And she is charismatic. But that only deepens her disappointment in herself. She is not where she wanted to be in life: struggling to make ends meet, twice convicted, having to reinvent herself.

Ms. Daniel was raised in a supportive environment in Flatbush, Brooklyn by her single mother Arrica and her grandmother.[1] Arrica worked hard, which took her away from childcare for long stretches of the day and week. Ms. Daniel's parents separated when she was young, and Arrica retained custody. Ms. Daniel's father tried to remain a part of Ms. Daniel's life, but Arrica did not allow much contact with the father. Ms. Daniel and her father's relationship is inconsistent.

---

[1] The factual recitations in this memorandum come from the PSR; the statement of reasons issued by the late Honorable Jack B. Weinstein and other documents filed in *United States v. Tatiana Daniel*, 15 Cr. 166 (JBW) (E.D.N.Y. July 13, 2016), ECF 66 (attached as Exhibit B); and defense team interviews with Ms. Daniel, her family and other supporters.

In her late teens, Ms. Daniel started rebelling. She stopped going to school and ignored her curfew. In 2012, Arrica sent Ms. Daniel to North Carolina to live with her godparents while Arrica moved to Pennsylvania. Arrica now lives in New Jersey.

In late 2013/early 2014, Ms. Daniel was homeless, sleeping on the couch at a girlfriend's apartment. The friend was related to a man who frequently visited the apartment and would pressure Ms. Daniel to find girls for sex parties. Ex. B at 3. If she did not comply, the man threatened her with eviction. *Id.* She was never paid for her recruitment efforts. In addition, the two girls Ms. Daniel recruited never engaged in the planned sex parties, *id.* at 9, and Ms. Daniel herself was barely twenty at the time. At sentencing, two FBI agents appeared to convey their support for Ms. Daniel. *Id.*

Throughout her life, Ms. Daniel has shown some academic aptitude. In high school, she tutored children in math and reading. She attended Gotham Professional Arts Academy in Brooklyn and later transferred to South Granville High School in Creedmoor, North Carolina. Although she did not graduate from high school, Ms. Daniel persevered and earned her GED while in custody at the Metropolitan Detention Center in Brooklyn.

Ms. Daniel has demonstrated a solid work ethic since a young age, starting with packing groceries for tips at the age of 10 or 11. As she grew older, she gained experience as an after-school math and reading tutor and held retail positions at 2Cute clothing store and Macy's. Despite facing challenges in her personal and professional life, Tatiana continues to strive for growth and improvement. Ms. Daniel will appear before the Court chastened but not defeated.

II. **The Offense: Nature and Circumstances of the Offense, the Guideline Range, and Avoiding Unwarranted Sentencing Disparities 18 U.S.C. §§ 3553(a)(1), (a)(4), (a)(6)**

The fraud schemes in which Ms. Daniel was involved were no doubt serious, and Ms. Daniel acknowledges that she is deserving of punishment. As proof, Ms. Daniel promptly

accepted responsibility, not just for the fraud schemes with which she was charged, but uncharged schemes as well.[2]

The Probation Department recommends a bottom-of-the-range sentence of 33 months. A review of recent fraud sentences in that range in the Southern and Eastern Districts (attached as Exhibit A) demonstrates that around three years in prison is more appropriate for defendants who betrayed the victim's or the public's trust; who were already well-off and were thus motivated by pure greed; who affected multiple, individual victims; who profited much more than Ms. Daniel did; who used sophisticated means; or who stole much more money than Ms. Daniel did.

Ms. Daniel is not well-off and, as misguided as she was, was not motivated by greed. The breadth of the schemes in which she was involved bespeak a lack of planning, follow-through and sophistication. No individual was victimized by Ms. Daniel's actions. Although $110,000 – the forfeiture amount – is a lot of money in absolute terms, it pales in comparison to the illicit profits amassed by other fraud defendants who were sentenced in the three-year range. A downward variance would thus avoid unwarranted sentencing disparities.

## CONCLUSION

A lengthy sentence here is unnecessary and may, in fact, have undesired effects. "Empirical research on the effects of (the experienced severity of) detention . . . shows mixed results ranging from an overall null effect or at best a weak deterrent effect on reoffending, to a

---

[2] The Probation Officer incorrectly states that no objections were lodged. On January 31, 2023, I emailed the Probation Officer that paragraph 143 – grounds for a variance – should be revised to note that Ms. Daniel "was ready and willing in May 2022 to plead guilty to substantially the same agreement to which she pleaded in December. The only reason for the delay was that counsel for the government was [on a personal leave from work during that time period for what I am sure were pressing reasons]. Ms. Daniel will ask the Court to take into account, when sentencing Ms. Daniels, her willingness to accept responsibility relatively early in the case."

mild criminogenic effect of detention. In sum, prior findings indicated that detention or the experienced severity of detention on its own does not consistently reduce subsequent criminal behavior." Franziska M. Yasrebi-de Kom et al., *The effect of sanction severity and its interaction with procedural justice,* 49 Crim. Justice and Behavior 200-219 (2022).

Research shows that prison reentry programs, the community to which releasees return and their social networks have been shown to have robust effects on reducing the likelihood of a releasee's return to crime.[3] Ms. Daniel can rely on a strong network of loving family and friends who value her as a dependable and essential part of her family and community.

For the foregoing reasons, a sentence well below the guideline range is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to accomplish individual deterrence, retribution and protection of the public.

Dated:   Brooklyn, New York
         May 4, 2023

Respectfully submitted,

_/s/ Ezra Spilke_
Ezra Spilke, Esq.
*Counsel for Tatiana Daniel*
1825 Foster Avenue, Suite 1K
Brooklyn, NY 11230
Tel: (718) 783-3682

---

[3] *See* Ellen A. C. Raaijmakers et al., *Exploring the Relationship between Subjectively Experienced Severity of Imprisonment and Recidivism: A Neglected Element in Testing Deterrence Theory*, 54 J. Research in Crime and Delinquency 3, 20 (2017), https://journals.sagepub.com/doi/pdf/10.1177/0022427816660588 (citing numerous studies with hundreds of citations).